IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DONTRAIL MATHIS; DONTRAUS JENKINS and RAMONA JAMES; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDUCARE COMMUNITY LIVING CORP,—TEXAS.; EDUCARE COMMUNITY LIVING LIMITED PARTNERSHIP; and RES-CARE, INC.,<br><br>Defendants. | CASE NO. 2:18-cv-518<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiffs DONTRAIL MATHIS ("Mathis"); DONTRAUS JENKINS ("Jenkins") and ROMONA JAMES ("James") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, VALLI KANE & VAGNINI LLP and ELLWANGER LAW LLLP, bring this action for damages and other legal and equitable relief from Defendants, EDUCARE COMMUNITY LIVING CORP.—TEXAS ("Defendant Educare"); EDUCARE COMMUNITY LIVING LIMTED PARTNERSHIP ("Partnership"); and RES-CARE, INC. ("Res-Care") (collectively, "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. This is a collective action brought by Plaintiffs challenging acts committed by Defendants against Plaintiffs and those similarly situated, which amounted to violations of federal wage and hour laws as set forth herein.

2. Defendants are corporations engaged in the business of providing living assistance, education, and healthcare to persons with disabilities and infirmities (the "Client(s)"). Defendants employed Plaintiffs as direct support professionals (the "Aides"). The Aides' primary job duties included grooming, feeding, ambulating, and medically monitoring, transporting, cleaning, bathing, and toileting, their Clients.

3. Plaintiffs bring this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective of persons who are and were employed by Defendants as direct support professionals during the past (3) years through the final date of disposition of this action who were not paid an overtime premium for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA and allege that they are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) liquidated damages, (iv) interest, and (v) attorney fees and costs, pursuant to the FLSA and such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. §§ 201 *et seq*.

5. Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is

also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business and reside in this district.

## THE PARTIES

6. Plaintiff Mathis is a citizen of Texas and resides in Paris, Texas

7. At all relevant times, Plaintiff Mathis was an "employee" within the meaning of the FLSA.

8. Plaintiff Jenkins is a citizen of Texas and resides in Paris, Texas

9. At all relevant times, Plaintiff Jenkins was an "employee" within the meaning of the FLSA.

10. Plaintiff James is a citizen of Texas and resides in Paris, Texas.

11. At all relevant times, Plaintiff James was an "employee" within the meaning of the FLSA.

12. Upon information and belief, Defendant Educare is organized under the laws of the state of Texas and has its principal place of business within Texas.

13. Defendant Educare transacted business in Texas and within this judicial district by employing Plaintiffs and those similarly situated as Aides at their Paris, Texas facility. Defendant Educare continues to transact business in Texas by employing Aides and by owning and operating facilities within Texas.

14. Defendant Educare has at all relevant times been an "employer" covered by the FLSA.

15. Upon information and belief, the amount of qualifying annual volume of business for Defendant Educare exceeds $500,000.00 and thus subjects Defendant Educare to the FLSA's overtime requirements.

16.     Upon information and belief, Defendant Educare is engaged in interstate commerce. This independently subjects Defendant Educare to the overtime requirements of the FLSA.

17.     Upon information and belief Defendant Educare is owned and operated by Defendant Partnership.

18.     Upon information and belief, Defendant Partnership is organized under the laws of the state of Kentucky and has its principal place of business within Kentucky.

19.     Defendant Partnership transacted business in Texas and within this judicial district by employing Plaintiffs and those similarly situated as Aides at their Paris, Texas facility. Defendant Partnership continues to transact business in Texas by employing Aides and by owning and operating facilities within Texas.

20.     Furthermore, Defendant Partnership owns and operates several assisted living facilities throughout the country including without limitation, within the states of: Missouri, Nevada, New Mexico, and North Carolina.

21.     Defendant Partnership has at all relevant times been an "employer" covered by the FLSA.

22.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Partnership exceeds $500,000.00 and thus subjects Defendant Partnership to the FLSA's overtime requirements.

23.     Upon information and belief, Defendant Partnership is engaged in interstate commerce. This independently subjects Defendant Partnership to the overtime requirements of the FLSA.

24. Defendants Educare and Partnership are both wholly owned subsidiaries of Defendant Res-Care.

25. Upon information and belief, Defendant Res-Care is organized under the laws of the state of Kentucky and has its principal place of business within Kentucky.

26. Defendant Res-Care transacted business in Texas and within this judicial district by employing Plaintiffs and those similarly situated as Aides at their Paris, Texas facility. Defendant Res-Care continues to transact business in Texas by employing Aides and by owning and operating facilities within Texas.

27. Upon information and belief, Defendant Res-Care owns and operates multiple facilities within forty-two (42) states and employs approximately 45,000 employees.

28. Furthermore, Defendant Res-Care owns and operates several assisted living facilities throughout the country.

29. Defendant Res-Care has at all relevant times been an "employer" covered by the FLSA.

30. Upon information and belief, the amount of qualifying annual volume of business for Defendant Partnership exceeds $500,000.00 and thus subjects Defendant Res-Care to the FLSA's overtime requirements.

31. Upon information and belief, Defendant Res-Care is engaged in interstate commerce. This independently subjects Defendant Res-Care to the overtime requirements of the FLSA.

32. Defendants all share a common headquarters, which is located at 9901 Linn Station Road, Louisville, Kentucky 40223.

33. Defendants jointly employed Plaintiffs and those similarly situated by employing or acting in the interest of employer towards Plaintiffs and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation and by suffering all those similarly situated employees to work. Alternatively, Defendants comprise a single integrated enterprise.

## STATEMENT OF THE FACTS

### I. Facts Common to All Plaintiffs

#### a. The Defendants-Clients Relationship

34. Defendants are engaged in the business of providing, among other things, living assistance and healthcare for those with disabilities and/or infirmities.

35. Upon information and belief, Defendant Res-Care owns and operates multiple facilities within forty-two (42) states and employees approximately 45,000 employees.

36. Aides are/were employed by Defendants at various assisted living facilities throughout the United States.

37. Defendants own and operate rental units where the Clients reside and pay rent.

38. Upon information and belief, Clients pay Defendants a single lump sum payment for both rent and for the Aides' care. Upon information and belief, it is Defendants' common practice to receive payment from the Clients via payment from disability check or Medicaid coverage.

39. Upon information and belief, the number of Clients living in a single rental unit ranged from one (1) to approximately four (4).

40. Upon information and belief, Aides were assigned to work with multiple Clients at a time.

41. Defendants also own and operate rehabilitation facilities.

42. The rehabilitation facilities' primary purpose is to foster relationships between Clients and encouraged self-help activities.

43. Not all Clients who attend the rehabilitation facility reside in a rental unit owned and operated by Defendants as some reside in their own homes.

44. Defendants' rehabilitation facilities are not educational establishments.

45. Defendants' rehabilitation facilities are not part of a school system.

46. Defendants are third party employers with respect to the Aides and the Clients.

47. The Clients do not employ or pay the Aides.

48. The Clients have no control over the terms and conditions of the Aides' employment.

49. The Clients pay Defendants for the Aides' care and Defendants pay the Aides.

50. Defendants have the power to hire and fire the Aides.

51. The Clients do not have the power to hire or fire the Aides.

52. Only Defendants monitored and controlled all aspects of the Aides' employment.

### b. The Aides' Duties

53. The Aides do not have specialized knowledge in teaching, medicine, or science.

54. The Aides do not live with their Clients.

55. The Aides reside in their own homes.

56. Upon information and belief, Aides perform medically related services on the Clients such as, but not limited to, medicating clients.

57. The Aides have two (2) supervisors, one (1) for the rehabilitation center, and one (1) for Defendants' rental units.

58. The Aides' primary duties are to groom, feed, ambulate, and medically monitor their Clients. Their other primary duties are to transport their Clients, ensure their Clients' safety, assist with their Clients' toileting and medicating, perform housekeeping duties for their Clients, and document the services they provided.

59. Occasionally, the Aides would perform their primary duties to in-home Clients at Clients' homes. While performing these services, the in-home Clients paid Defendants directly and did not pay the Aides, nor did the in-home Clients have any control over the terms and conditions of their respective Aide's employment.

60. The Aides transported their Clients to and from the rehabilitation facilities.

61. While at Defendants' rehabilitation facilities, the Aides also engaged in duties other than the above-mentioned. While at the rehabilitation facilities, Aides were responsible for fostering positive relationships between Clients and encouraging self-help activities.

62. The Aides do not have certificates in medicine, science, or teaching.

63. The Aides are not employed by an educational establishment.

### c. The Aides' Work Schedule

64. The Aides are not allowed to select their own work schedule and are required to work the days and hours set by Defendants.

The Aides' work schedule varies from approximately four (4) to seven (7) days per workweek. The Aides' work schedule varies from approximately nine (9) to approximately twelve (12) hours per workday.

65. The Aides are not permitted to take bona fide meal breaks.

66. The Aides receive their weekly schedule from their supervisors.

67. The Aides frequently worked more hours than their scheduled work hours.

68. From Monday through Friday, the Aides typically spend a majority of their workday— approximately seven (7) hours—at their assigned rehabilitation facility.

69. On Saturday and Sunday, Aides typically spend approximately twelve (12) hours per workday caring for their Clients at Defendants' rental units.

### d. Defendants' Compensation Scheme

70. The Aides are compensated on an hourly basis. Upon information and belief, Aides are compensated at a rate of approximately $8.00 per hour.

71. The Aides' pay periods were semi-monthly.

72. Defendants then issue paychecks to the Aides approximately one week after their pay period ends.

73. Aides' paychecks were issued from Defendants' headquarters in Louisville, Kentucky.

74. Defendants record the Aides' time worked through a telephone "call in" time recording system. The telephone "call in" system is a "1-800" number that records each time an Aide calls to "clock-in" and "clock-out."

75. Defendants record the Aides hours worked at the rehabilitation facilities and hours worked at the rental units.

76. Each workweek, the supervisors print out two (2) sheets of data for the hours the Aides worked—one for the hours worked at the rehabilitation facilities and one for the total hours worked—to issue to the Aides.

77. Aides are not exempt from the statutory overtime provisions of the FLSA.

78. Aides frequently work in excess of forty (40) hours per workweek.

79. Despite working, over forty (40) hours per workweek, Aides are not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

## II. Facts Specific to Plaintiffs Mathis

80. Plaintiff Mathis repeats and re-alleges all allegations and facts in the preceding paragraphs.

81. In September 2018, Plaintiff Mathis began his employment with Defendants as a direct support professional and currently remains employed by Defendants as a direct support professional.

82. Plaintiff Mathis worked out of Defendants' Paris, Texas facility.

83. Plaintiff Mathis's Clients resided in a rental unit owned by Defendants.

84. Plaintiff Mathis was specifically assigned to care for approximately three (3) Clients at Defendants' rental units.

85. Upon information and belief, Plaintiff Mathis's Clients paid Defendants a single lump sum payment each month for rent and Plaintiff Mathis's care.

86. Defendants then paid Plaintiff Mathis on an hourly basis.

87. Plaintiff Mathis was paid at a rate of $8.00 per hour.

88. Plaintiff Mathis's work schedule varied but he worked approximately seven (7) days per workweek.

89. Plaintiff Mathis's work schedule varied but he worked approximately twelve (12) hours per workday.

90. Plaintiff Mathis spent approximately all of his work hours caring for his Clients at Defendants' rental units.

91. Plaintiff Mathis worked in excess forty (40) hours per workweek. On average, he worked approximately fifty-five (55) hours per workweek.

92. Plaintiff Mathis was paid at his straight rate for most, if not all, of the hours he worked in excess of forty (40) hours per workweek.

93. Plaintiff Mathis was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

94. Plaintiff Mathis is not exempt from the statutory overtime provisions of the FLSA.

### III. Facts Specific to Plaintiff Jenkins

1. Plaintiff Jenkins repeats and re-alleges all allegations and facts in the preceding paragraphs.

2. In 2016, Plaintiff Jenkins began his employment with Defendants as a direct support professional and currently remains employed by Defendants as a direct support professional.

3. Plaintiff Jenkins worked out of Defendants' Paris, Texas facility.

4. Plaintiff Jenkins's Clients resided in a rental unit owned by Defendants.

5. Plaintiff Jenkins was specifically assigned to care for approximately three (3) Clients at Defendants' rental units.

6. Upon information and belief, Plaintiff Jenkins's Clients paid Defendants a single lump sum payment each month for rent and Plaintiff Jenkins's care.

7. Defendants then paid Plaintiff Jenkins on an hourly basis.

8. Plaintiff Jenkins was paid at a rate of $8.00 per hour.

9. Plaintiff Jenkins's work schedule varied but he worked approximately four (4) to seven (7) days per workweek.

10. Plaintiff Jenkins's work schedule varied but he worked approximately nine (9) to twelve (12) hours per workday.

11. From Monday through Friday, Plaintiff Jenkins spent a majority of his workday—approximately seven (7) hours—at his assigned rehabilitation facility.

12. On Saturday and Sunday, Plaintiff Jenkins spent approximately twelve (12) hours per workday caring for his Clients at Defendants' rental units.

13. Plaintiff Jenkins worked in excess forty (40) hours per workweek. On average, he worked approximately fifty (50) hours per workweek.

14. Plaintiff was paid at his straight rate for most, if not all, of the hours he worked in excess of forty (40) hours per workweek.

15. Plaintiff Jenkins was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

16. Plaintiff Jenkins is not exempt from the statutory overtime provisions of the FLSA.

### IV. Facts Specific to Plaintiff James

17. Plaintiff James repeats and re-alleges all allegations and facts in the preceding paragraphs.

18. In 2015, Plaintiff James began her employment with Defendants as a direct support professional.

19. Plaintiff James worked out of Defendants' Paris, Texas facility.

20. Plaintiff James's Clients resided in a rental unit owned by Defendants.

21. Occasionally, Plaintiff James performed services for Clients in their own homes. These in-house Clients paid Defendants for her services and had no control over the terms and conditions of her employment.

22. Plaintiff James was specifically assigned to care for approximately three (3) Clients at Defendants' rental units.

23. Upon information and belief, Plaintiff James's Clients paid Defendants a single lump sum payment each month for rent and Plaintiff James's care.

24. Defendants then paid Plaintiff James on an hourly basis.

25. Plaintiff James was paid at a rate of $8.00 per hour.

26. Plaintiff James's work schedule varied but she worked approximately four (4) to seven (7) days per workweek.

27. Plaintiff James's work schedule varied but she worked approximately eight (8) to twelve (12) hours per workday.

28. From Monday through Friday, Plaintiff James spent a majority of her workday—approximately seven (7) hours—at her assigned rehabilitation facility.

29. On Saturday and Sunday, Plaintiff James spent approximately twelve (12) hours per workday caring for her Clients at Defendants' rental units.

30. Plaintiff James worked in excess forty hours per workweek. On average, she worked approximately forty-five (45) hours per workweek.

31. Plaintiff James was paid at her straight rate for most, if not all, of the hours she worked in excess of forty (40) hours per workweek.

32. Plaintiff James was not paid with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

33. Plaintiff James is not exempt from the statutory overtime provisions of the FLSA.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

34. Plaintiffs seek to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following collective:

> All direct support professionals employed by Defendants during the relevant time period, who have been subject to Defendants' policies of requiring them to work in excess of forty (40) hours per workweek without being compensated with an overtime premium for all hours worked in excess of forty (40) per workweek.

35. At all relevant times, Plaintiffs were similarly situated to all such individuals in the FLSA Collective[1] because, while employed by Defendants, Plaintiffs and all FLSA Plaintiffs performed similar tasks, were subjected to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

36. Defendants are and have been aware of the requirement to pay Plaintiffs and the FLSA Plaintiffs at a rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully chose not to do so.

37. The FLSA Plaintiffs, through Plaintiffs' FLSA claim, are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available through Defendants' records. Notice of this collective action can be made as soon as the Court determines it is appropriate to do so.

38. The number of FLSA Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

---

[1] Hereinafter referred to as the "FLSA Plaintiffs."

39. All questions relating to Defendants' violation of the FLSA share the common factual basis with Plaintiffs. No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Plaintiffs and the claims asserted by Plaintiffs are typical of those of members of the collective.

40. Plaintiffs will fairly and adequately represent the interests of the collective and have no interests conflicting with the collective.

41. A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

42. Plaintiffs' attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

43. The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

44. The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201** *et seq.***, Made by Plaintiffs on Behalf of All FLSA Plaintiffs**

45. Plaintiffs and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

46.     Throughout the period covered by the applicable statute of limitations, Plaintiffs and other FLSA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

47.     Upon information and belief, Defendants knowingly failed to pay Plaintiffs and the FLSA Plaintiffs for all hours worked and the statutorily required overtime rate for all hours worked in excess of forty (40) hours per workweek.

48.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

49.     Defendants' conduct was in violation of the Fair Labor Standards Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the FLSA Collective employed by Defendants, demand judgment against Defendants as follows:

A.      At the earliest possible time, Plaintiffs should be allowed to give notice of this Collective action, or the Court should issue such notice, to all members of the purported collective, defined herein. Such notice shall inform them that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper overtime wages;

B.      Designation of Plaintiffs as representatives of the FLSA Collective defined herein, and Plaintiffs' counsel as the Collective's counsel;

C.      Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D.      Demand a jury trial on these issues to determine liability and damages;

E. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

F. A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;

G. All damages which Plaintiffs and all FLSA Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

H. An award to Plaintiffs and all FLSA Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid overtime wages from the date such wages were earned and due;

I. An award to Plaintiffs and all FLSA Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

J. An award to Plaintiffs and all FLSA Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

K. An award to Plaintiffs and all FLSA Plaintiffs for their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

L. Pre-judgment and post-judgment interest, as provided by law; and

M. Granting Plaintiffs and all FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Original Complaint.

Dated:   November 21, 2018                    Respectfully submitted,

/s/ Jay D. Ellwanger
Jay D. Ellwanger
Texas Bar No. 24036522
jellwanger@equalrights.law
**Ellwanger Law LLLP**
8310-1 N. Capital of Texas Highway, Suite 190
Austin, Texas 7831
Tel: (737) 808-2260

OF COUNSEL:

James A. Vagnini (*pro hac vice* to be filed)
Robert R. Barravecchio (*pro hac vice* to be filed)
Alexander M. White (*pro hac vice* to be filed)
jvagnini@vkvlawyers.com
rrb@vkvlawyers.com
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248

**ATTORNEYS FOR PLAINTIFFS**